UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JONATHAN QUEZADA,
    Plaintiff,
  v.
NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,
    Defendant.

NO. EDCV 16-1013-KS

MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff filed a Complaint on May 17, 2016, seeking review of the Commissioner's denial of his application for Title XVI supplemental security income ("SSI") benefits. (*See* Dkt. No. 1.) On October 4, 2016, defendant filed an Answer to plaintiff's Complaint. (Dkt. No. 16.) All parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (*See* Dkt. Nos. 11, 12, 13.)

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

On December 27, 2016, the parties filed a "Joint Submission" ("Joint Stip.") setting forth the issues and contentions in the case. (*See* Dkt. No. 18.) Plaintiff seeks an order reversing the Commissioner's decision and remanding this case for benefits, or remanding for further proceedings. (*See* Joint Stip. at 22.) Defendant requests that the decision be affirmed, or the case be remanded to the Agency for further administrative development. (*See* Joint Stip. at 22.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 7, 2009, plaintiff filed his application for SSI benefits, alleging a disability onset date of May 22, 2004. (AR 14, 103.)[2] Plaintiff was born on December 14, 1971, which made him 32 years old at the time his disability allegedly began and 37 years old at the time he filed his application. (AR 24, 256.) Plaintiff did not graduate from high school, completing only the 11th grade. (AR 43, 67.) He had previously worked as a construction worker (DOT 869.687-026), but, after he was stabbed "multiple times" in his lower back at a nightclub in 2004, he claims he has been unable to work. (AR 17-18, 24.)

After initial denials, a hearing was held before Administrative Law Judge William Mueller ("ALJ Mueller"), on November 8, 2011. (AR 33-59.) On December 13, 2011, ALJ Mueller issued an unfavorable decision, finding that plaintiff had a severe medically determinable impairment – "residuals of multiple stab wounds to the back" – but had not been under a disability since the date of his application. (AR 100-10.)

---

[2] An Administrative Law Judge noted that "[a]lthough the claimant has alleged on onset date of May 22, 2014, the date of the claimant's current application for benefits is October 7, 2009," and "[s]upplemental security income is not payable prior to the month following the month in which the application was filed." (AR 18, citing 20 C.F.R. § 416.335.)

On August 13, 2013, the Appeals Council remanded plaintiff's case with instructions to: consider the weight to be given to an opinion from consultative examiner Dr. Bryan To; address any evidence from Licensed Clinical Social Worker ("LCSW") Mark Daniels (whom the Appeals Council noted was "not an acceptable medical source"); address evidence from a State Agency physician, "A. Schrift"; update the treatment record; and obtain testimony from a vocational expert ("VE") as warranted. (AR 116-17, 188-91.)

On December 23, 2013, another hearing was held before ALJ Mueller. (AR 60-73, 218.) Plaintiff appeared telephonically and represented himself, without an attorney. (*See id.*) A VE also testified. (*Id.*) Following that hearing, the case was again remanded by the Appeals Council for further proceedings, with directions to update the treatment record, obtain evidence from a VE, and resolve any conflicts that might exist between any occupational evidence the VE might provide and the Dictionary of Occupational Titles ("DOT"). (AR 11.)

On September 17, 2014, Administrative Law Judge Dante Alegre ("ALJ Alegre" or "the ALJ") held a third hearing. (AR 74-94.) Plaintiff was present and represented by counsel. (*Id.*) A VE, Aida Worthington ("the VE"), also appeared and testified. (*Id*.) On December 18, 2014, ALJ Alegre issued an opinion denying plaintiff's application for SSI. (AR 8-32.) Plaintiff requested review of the 2014 adverse decision (AR 7) and on April 25, 2016, the Appeal Council denied Plaintiff's request for review. (AR 1-5.) This timely appeal followed.

**SUMMARY OF ADMINISTRATIVE DECISION**

In an opinion dated December 18, 2014, ALJ Alegre found that plaintiff had not engaged in substantial gainful activity since October 7, 2009, the date of the SSI application. (AR 14.) The ALJ further found that plaintiff had the following severe impairments: (1)

3

"status post stab wounds in the lumbar area"; (2) lumbar strain with sciatica; (3) depression; and (4) posttraumatic stress disorder ("PTSD"). (AR 14.) ALJ Alegre determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (AR 15.) The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform medium work as follows: "he could lift or carry 50 pounds occasionally and 25 pounds frequently; he could sit, stand, or walk for 6 hours each in an 8-hour day; he could bend, crouch, stop, or crawl frequently; and he could have frequent contact with the public or coworkers." (AR 16.)

ALJ Alegre found that plaintiff was unable to perform his past relevant work as a construction worker but could do other jobs that exist in significant numbers in the national economy, including the representative occupations of: (1) "stores laborer," DOT 922.687-058; (2) "linen room attendant," DOT 222.387-030; or (3) "hand packager," DOT 920.587-018. (AR 24-25.) Consequently, the ALJ found that plaintiff had not been under a disability since the date the application was filed on October 7, 2009 through the date of his decision. (AR 25.)

## DISPUTED ISSUES

The parties' Joint Submission presents two disputed issues. First, plaintiff contends that the ALJ did not properly consider and evaluate the opinion of "Licensed Family Marriage Therapist" Dr. Avigail Ward. (Joint Stip. at 3-7.) Second, plaintiff contends that the ALJ did not properly evaluate the records from plaintiff's "treating pain management physician," Dr. Navdeep Loomba. (*Id.* at 13-16.)

\\
\\
\\

4

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

**I.    The ALJ's Evaluation of Dr. Ward's Opinion**

Plaintiff first argues that the ALJ improperly dismissed the opinion from Dr. Ward and did not give her opinion the "substantial weight" it deserved. (Joint Stip. at 3.) Specifically, plaintiff contends that the ALJ's rationale for discounting Dr. Ward's opinion was not supported by substantial evidence in the record. (*See* Joint Stip. at 3-4.)

**A.    Dr. Ward's Treatment Records and Opinions**

In a Medi-Cal authorization form, Dr. Avigail Ward is referred to as an "MFCC," that is, a "Marriage, Family, and Child Counselor," and, in the record, she refers to herself as a "Marriage and Family Therapist." (AR 474, 495.) Dr. Ward also at times refers to herself as an "LMFT," that is, a "Licensed Marriage and Family Therapist." (*See, e.g.,* AR 598.) Dr. Ward was authorized under plaintiff's Medi-Cal insurance to provide 13 one-hour psychotherapy sessions to plaintiff. (AR 474.)

Plaintiff's "Client Information Form" indicates that he sought counseling from Dr. Ward "to help w/PTSD." (AR 479.) A "Client Plan," apparently completed by Dr. Ward, lists "treatment goals" as "reduce PTSD symptoms," and lists plaintiff's "current problem" as "suffers w/PTSD & depression, stabbed in 2006." (AR 485-86.)

A "Diagnosis" prepared by Dr. Ward and dated January 14, 2014 indicates, on "Axis I," "chronic" PTSD, on Axis II a "depressive disorder," and on Axis V a "GAF" score

6

of 50. (AR 490.) In a check-the-box form entitled "Medical Source Statement of Ability to do Work Related Activities (MENTAL)," and signed by Dr. Ward on February 11, 2014, Dr. Ward opines that, in every listed mental ability category, including categories such as "complete a normal workday" or "respond appropriately to changes in work setting," plaintiff is rated as "category IV," which means "precludes performance for more than 15% of an 8-hour workday." (AR 493-95.) At the end of the 3-page mental ability evaluation, Dr. Ward opines that plaintiff would miss "more than 3 days" of work, assumedly per month. (AR 495.)

A single-page document with the heading "Progress Notes" indicates that, when Dr. Ward issued her "Medical Source Statement of Ability to Do Work Related Activities (MENTAL)" form on February 11, 2014, Dr. Ward had seen plaintiff three times – on January 14, 2014 and January 28, 2014 for an hour each time, and on February 11, 2014 for two hours. (AR 493-95, 598, 678-80.) The Progress Notes reflect that Dr. Ward counseled plaintiff about his 2006 stabbing incident, and about depression, and the notes indicate that "client responded well" and "client responded positively." (AR 598.)

However, the Court notes that "Exhibit 30F," cited by the ALJ in his opinion, includes longer "Progress Notes" covering more than three dates. (AR 678-80.) Those Progress Notes cover not only January 14 and 28, 2014, and February 11, 2014, but also reference six additional dates: March 4 and 18, 2014; April 1 and 29, 2014; and May 13 and 27, 2014. (*Id.*) The Progress Notes reflect that from February 11, 2014 through April 29, 2014, Dr. Ward saw plaintiff for two hours at each visit, and on May 13, 2014, Dr. Ward saw plaintiff for three hours. (*Id.*) The notes reflect that plaintiff apparently did not show up for a scheduled three-hour appointment on May 27, 2014. (AR 680.)

Those additional notes from March through May 2014 indicate that plaintiff "responded well" and "responded positively," and plaintiff said he "sees overall

7

improvement," and plaintiff shared at times that he "has been feeling much better." (AR 678-80.) The notes also reflect that plaintiff was "feeling sad," "very anxious," and "scared," and Dr. Ward reported that on April 1, 2014 she referred plaintiff to a psychiatrist, and on May 13, 2014, she gave plaintiff a number "for county psychiatrists." (AR 679-80.)

B. **Applicable Law**

In evaluating physicians' opinions, the case law and regulations distinguish among three types: (1) those who treat the claimant (*i.e.,* treating physicians); (2) those who see the claimant in person and perform a consultative examination but do not treat the claimant (examining or consultative physicians); and (3) those who neither treat nor examine the claimant, usually only reviewing records (non-examining physicians). *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995); *see also* 20 C.F.R. §§ 416.902, 416.927(d). Although the opinion of a treating source is generally entitled to greater weight than the opinions of an examining source or non-examining source, *see Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987), not all medical care providers with ongoing treatment relationships with a claimant constitute a "treating source." 20 C.F.R. § 416.927(a)(2). Instead, certain therapists, social workers, and nurses are not included in the regulations' definition of an "acceptable medical source," and therefore, regardless of the length of their treatment relationship with a claimant, their opinions are not entitled to the same weight as the opinion of an "acceptable medical source" like a licensed physician or psychologist. *See* 20 C.F.R. § 416.927(a)(2) (defining a "treating source" as an "acceptable medical source"); 20 C.F.R. § 416.902 (defining "acceptable medical source"); SSR 06-03p (same).

Significantly, an ALJ need only articulate "germane" reasons to justify a decision to discount the opinion of a medical care provider who is not an "acceptable medical source." *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015). In contrast, when a medical care provider meets the regulatory definition of a "treating source," the ALJ may discount the

8

source's opinion only after articulating either: "clear and convincing reasons that are supported by substantial evidence" – if the source's opinion is uncontradicted; or "specific and legitimate reasons that are supported by substantial evidence" – if the source's opinion is contradicted. *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Further, in determining how much weight to accord a treating source's opinion, the ALJ must consider the factors set out 20 C.F.R. § 416.927(d)(2)-(6), including the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, the "[n]ature and extent of the treatment relationship" between the patient and the treating physician, the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. Ultimately, the ALJ need not accept a treating physician's opinion that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Magallanes,* 881 F.2d at 751 (citing *Young v. Heckler,* 803 F.2d 963, 968 (9th Cir. 1986)).

### C. The ALJ Properly Evaluated Dr. Ward's Opinions

As a threshold issue, the Court notes that there may be a question about how to classify Dr. Ward, as either an "acceptable medical source" or as a "not-acceptable medical source." *See* SSR 06-03p. The record indicates that Dr. Ward received her "Ph.D." in "Marriage and Family Therapy" (AR 481), however ALJ Alegre inconsistently refers to her as a "therapist" (*see e.g.*, AR 22) and a "psychologist" (*see e.g.*, *id.* 17). A licensed psychologist is an "acceptable medical source," whereas a "licensed marriage and family therapist" or "LMFT" is not. *See* 20 C.F.R. § 416.902 (defining "acceptable medical source"); SSR 06-03p (same); *see also Roundtree v. Colvin*, No. EDCV 14-00803-JEM, 2015 WL 667696, at *6 (C.D. Cal. Feb. 17, 2015) ("marriage and family therapists are not acceptable medical sources"). However, regardless of whether the ALJ was required to articulate "specific and legitimate" or "germane" reasons for discounting Dr. Ward's opinion, the ALJ met this standard.

9

First, the ALJ called Dr. Ward's assessments on a check box form "conclusory." (AR 23.) Second, he noted that Dr. Ward provided her opinion after seeing plaintiff for only three sessions, reflecting a short treatment relationship. (*Id.*) Third, he observed that Dr. Ward's opinion was inconsistent with her treatment notes, which stated that plaintiff was responding well to treatment. (*Id.*) The ALJ further noted that Dr. Ward's assessments were contradicted by the opinions and findings of Dr. Bagner, the consulting examining psychiatrist. (*Id.*)

The record supports the ALJ's characterization of Dr. Ward's assessments as "conclusory" and inadequately supported because, when Dr. Ward offered her opinions on a check box form about plaintiff's mental abilities and his capacities for work, she had only seen plaintiff in three sessions for a total of four hours. (*See* AR 493-95, 678.) Substantial evidence in the record also supports the ALJ's finding that Dr. Ward's opinions were contradicted by her treatment notes. Dr. Ward's "Progress Notes" state that, over the course of the eight sessions she had with plaintiff from January 2014 through May 2014, plaintiff "responded well" and "responded positively," and that plaintiff "sees overall improvement" and "shared he has been feeling much better." (*See* AR 678-80.) Accordingly, the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. Ward's statements. *See Magallanes,* 881 F.2d at 751 (ALJ need not accept brief, conclusionary opinion with little supporting clinical findings); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("discrepancy" between treating physician's assessment and clinical notes is a clear and convincing reason for not relying on the doctor's opinion); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ need not accept opinion that is "conclusory and inadequately supported by clinical findings").

Plaintiff nevertheless argues that the Court should remand for further evaluation of Dr. Ward's opinions because they are buttressed by the August 31, 2011 opinion of Dr. Seehrai,[3] a prison psychiatrist, and the November 24, 2010 opinion of licensed clinical social worker Mark Daniels.[4] (*See* Joint Stip. at 6-7, citing *Lester,* 81 F.3d at 834.) However, the question for the Court is not whether there is some evidence in the record that is consistent with Dr. Ward's opinions, but rather, assuming *arguendo* that Dr. Ward is an acceptable medical source, whether the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. Ward's opinions. The Court finds that the ALJ met this standard, and therefore, the ALJ's evaluation of Dr. Ward's opinion is free from legal error and does not warrant remand.

**II.    The ALJ's Evaluation of Dr. Loomba's Records**

Plaintiff's second argument is that the ALJ's RFC assessment "is not based on the substantial evidence in the record" because the ALJ erred in evaluating medical records from plaintiff's treating "pain management physician," Dr. Navdeep Loomba. (Joint Stip. at 13.) More specifically, plaintiff contends that "the ALJ should have given more credit to Dr. Loomba's assertions in the medical record regarding [plaintiff's] severe pain" because "Dr.

---

[3]    Dr. Seehrai opined that plaintiff was "unable to meet competitive standards" in 24 of the 25 mental ability categories listed on the form, but for some reason listed "unknown" for the box labeled "[b]e aware of normal hazards and take appropriate precautions." (*See* AR 396-97.) Dr. Seehrai opined that he anticipated that plaintiff would be absent from work "more than four days a month." (AR 396-97.) The ALJ discounted Dr. Seehrai's assessments because they were "conclusory" and "unsupported by any clinical notes," and because they were "inconsistent with the bulk of the mental health treatment records," and because records from the San Bernardino's Sheriff's Detention Facility "include no indications that Dr. Seehrai provided any recent treatment for the claimant." (*See* AR 22.)

[4]    LCSW Daniels completed the same two-page checklist form that Dr. Seehrai used, and LCSW Daniels generally agreed with Dr. Seehrai's assessments of plaintiff's mental limitations, and opined that plaintiff would miss more than four days of work per month. (AR 22-23, citing AR 419-20.) The ALJ discounted Mr. Daniels' opinion because his treatment relationship with plaintiff was short, consisting of five sessions from January 2010 to February 2010 while plaintiff was incarcerated, and conflicted "with the benign objective findings in his own clinical notes, the opinions and findings detailed in Dr. Bagner's consultative examination report, and the medical records as a whole." (AR 23, citing Exhibit 9F [AR 381-86].)

11

Loomba was in the best position to provide an opinion regarding [plaintiff's] physical condition." (Joint Stip. at 21.)

### A. Dr. Loomba's Records

The record includes treatment notes from Dr. Loomba, a pain specialist at Global Pain Care, from September 28, 2011 to August 1, 2014. (*See* AR 497-582, Ex. 25F; 704-24.) It appears that Dr. Nasrin Lopa of High Desert Primary Care ("HDPC") originally referred plaintiff to Dr. Loomba for "pain management." (*See, e.g.,* AR 444, 450.) Dr. Loomba saw plaintiff 36 times over the three year period, including at plaintiff's first 13 visits, from September 28, 2011 to October 23, 2012. (AR 497-582, 704-24.) In total, Dr. Loomba personally saw and examined plaintiff at 26 of plaintiff's 36 visits, and he signed off on the reports of a certified nurse practitioner, "Don Jeske, NP-C" ("NP Jeske"), who examined and evaluated plaintiff at the other 10 visits. (*Id.*)

At the first visit, Dr. Loomba summarized plaintiff's pain history as follows:

> pain radiates from the neck into both shoulders and arms, upto [sic] the elbow . . . also radiates from low back into the hip, back of thigh and into the right leg, upto [sic] the ankle. The pain is described as sharp. The severity of the pain is 7/10. The pain is aggravated by movement, physical activity. The pain is relieved by medications, rest. The pain medications are not helping enough.

(AR 577.) In documenting the results of his examination, Dr. Loomba noted:

> There is no muscle spasm or tenderness in the lumbar area of the back . . . Good range of motion of bilateral upper extremities. Motor strength is 5/5 in bilateral

|   |   |
|---|---|
| 1 | upper extremities. . . The patient has good range of motion of the bilateral lower |
| 2 | extremities. Motor strength is 5/5 in bilateral lower extremities. |

(AR 578.) Dr. Loomba's assessment indicated "chronic pain due to trauma" and he prescribed continued medication with Percocet and started plaintiff on "Morphine ER and Phenergan." (*Id.*) At subsequent visits from 2011 through 2014, Dr. Loomba's progress notes consistently indicate that plaintiff's "pain is relieved by medications, rest" and "pain medications are helping." (*See, e.g.,* 571, 568, 565, 562, 559, 556, 553, 550, 547, 544, 541, 539, 536, 533, 530, 527, 497, 704, 707, 710.) Dr. Loomba continued plaintiff's strong pain medications throughout his treatment, but also consistently reported that plaintiff had no muscle spasm or tenderness in the lumbar area of the back and good range of motion and motor strength in his upper and lower extremities. (*See, e.g.*, AR 554, 557, 560, 563, 566, 569, 581, 705, 708.)

At plaintiff's last visit to Global Pain Care on August 1, 2014, he was examined and evaluated by NP Jeske. (AR 704.) Plaintiff still presented with "chronic neck and low back pain." (AR 704.) Plaintiff was taking Triamcinolone, Fluocinonide, Zoloft, Lisinopril, MS Contin [sic], Percocet, Promethazine, and Xanax at that time. (AR 704.) Plaintiff complained of fatigue, muscle and joint pain, leg cramps, depression, and "sleep disturbances." (*See* AR 704-05.) Under "Assessments," the record states "[c]hronic pain due to trauma" and "[m]yofascial pain syndrome." (AR 705.) The record notes that plaintiff's prescription for "MS Contin" was stopped because it "sedated patient to [sic] much," and the record states that "I will start him on Oxycontin mg as he cannot tolerate MS Contin." (AR 705.)

\\
\\
\\
\\

B.  **Applicable Law**

As noted above, the ALJ may reject a treating physician's uncontradicted opinion only by providing clear and convincing reasons supported by substantial evidence. *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998). When a treating physician's opinion is contradicted by other medical sources, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence in the record in order to discount it. *Lester,* 81 F.3d at 830. Further, an ALJ errs when he discounts an examining physician's medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Finally, "[w]hen there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence" in a disability benefits case, the ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citation omitted).

C.  **The ALJ Failed To Adequately Develop the Record On Dr. Loomba's Opinions**

Plaintiff contends that the ALJ "completely ignored" Dr. Loomba's medical records. (Joint Stip. at 11.) The record refutes this contention. Although the ALJ noted "that the record includes no medical sources statements from . . . Dr. Navdeep Loomba of Global Pain Care," the ALJ also acknowledged that Dr. Loomba was one of the "medical providers [who] treated the claimant for the longest duration and arguably [was] best situated to render an opinion discussing the claimant's functional limitations." (AR 19, citing, *inter alia,*

14

Exhibit 25F [AR 497-582] and Exhibit 32F [AR 703-24].) Notwithstanding the absence of a specific "source statement" or functional assessment from Dr. Loomba, the ALJ specifically cited Dr. Loomba's treatment records, stating:

> The [plaintiff's] recent clinical visits to Global Pain Care were negative for indications of muscle spasms or lumbar tenderness; indeed, such visits illustrated the [plaintiff's] full range of motion in his back and extremities, full muscle strength, and normal sensation.

(AR 18 (citing Exhibits 25F (Global Pain Care records) and 32F).) The ALJ also referenced Dr. Loomba's records when stating that "the medical records reflect that conservative treatment measures, particularly pain medication, generally relieved [plaintiff's] symptoms of back pain." (AR 18, citing Exhibit 25F [AR 496-582, records from Dr. Loomba].)

The ALJ gave "great weight" to the opinions from the consultative examiners Dr. Bernabe and Dr. Karamlou, and to the assessment of the State Agency medical consultant Dr. L. Naiman. (*See* AR 20.) The ALJ also gave "partial weight" to the opinion of consultative examiner Dr. Bryan To. (AR 20.) In particular, the ALJ found that the objective findings and opinions from Dr. Bernabe and Dr. Karamlou were "not only consistent with one another, they are supported by the treatment record as a whole, particularly the records from Global Pain Care [*i.e.,* Dr. Loomba's company] which are illustrative of the claimant's relatively few and benign positive symptoms and his lack of aggressive treatment." (AR 20, citing Exhibit 25F [AR 497-582] and Exhibit 32F [AR 703-24].)

Thus, this Court's examination of the record reveals that, contrary to plaintiff's assertion, the ALJ did not completely ignore Dr. Loomba's records. Indeed, in his opinion, the ALJ cited evidence in Dr. Loomba's treatment records that plaintiff's had normal range

15

of motion in his extremities, had no spasms in his lumbar back (the site of the "well healed" stabbing scar), and his pain improved with medication— albeit strong narcotic painkillers, including Percocet and Morphine ER. (*See* AR 20.) That said, the ALJ nonetheless failed to fulfill his obligation to fully develop the record by obtaining an opinion or functional assessment of plaintiff's limitations from Dr. Loomba.

Although it is the claimant's burden to establish disability and entitlement to benefits, *Valentine v. Comm'r of Soc. Sec.*, 575 F.3d 685, 689 (9th Cir. 2009) (claimant bears the burden of proof at steps one through four of the sequential analysis), *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), the ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered" when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes*, 276 F.3d at 459-60; *Tonapetyan*, 242 F.3d at 1150 (9th Cir. 2001) (internal quotation marks and citation omitted).

In this instance, the remand order from the Appeals Council provided detailed instructions to the ALJ on what steps needed to be taken to adequately develop the record. (AR 11.) The ALJ outlined, in his decision, the directives from the Appeals, including that the ALJ:

> "Update the treatment record. Give further consideration to the claimant's maximum residual functional capacity . . . and provide rationale with specific references to evidence of record in support of assessed limitations . . . In so doing, evaluate the treating and nontreating source opinions . . . and explain the weight given to such opinion evidence. As appropriate, the [ALJ] may request the treating and nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairment[.]

16

(AR 11.) Even though the directions to the ALJ regarding additional evidence are permissive, *i.e.*, "may request," rather than mandatory, the Appeals Council plainly contemplated that the ALJ would seek additional information to clarify the records provided by medical sources.

The ALJ obtained the treatment records from Dr. Loomba, but the pain specialist did not provide a source statement or functional assessment with his records. The ALJ acknowledged in his decision that Dr. Loomba was one of the medical providers who "treated [plaintiff] for the longest duration and arguably [was] best situated to render an opinion discussing [plaintiff's] functional limitations." (AR 19.) Nevertheless, and despite the Appeals Council's directive to obtain additional evidence and/or clarification if appropriate, the ALJ neglected to ask Dr. Loomba for an opinion about plaintiff's functional limitations. (AR 19.) Instead, after noting that Dr. Loomba had not provided an opinion about plaintiff's functional limitations, the ALJ did not assign any particular weight to Dr. Loomba's assessments.

Although the ALJ did not assign any particular weight to Dr. Loomba's observations in his treatment records, Dr. Loomba's records show plaintiff was treated regularly for more than three years for severe back pain with powerful narcotic prescriptions, including morphine and OxyContin. The records also show that while plaintiff's back pain appears to have been relieved to some degree by medication *in combination with* periods of rest and/or lying down. (*See e.g.,* Exh. 25F, AR 497-582.) In the absence of a functional assessment from Dr. Loomba, Dr. Loomba's prescriptions and observations are difficult to reconcile with the ALJ's RFC determination that plaintiff can perform medium work including lifting "50 pounds occasionally and 25 pounds frequently" and that plaintiff can "bend, crouch, stoop, or crawl frequently." (AR 16.)

In light of the foregoing, the Court finds that the record was inadequate to allow for proper evaluation of plaintiff's physical impairments because: (1) it did not include a functional assessment from the medical provider who was "arguably best situated to render an opinion discussing [plaintiff's] functional limitations" (AR 19); and (2) that medical provider's treatment records suggested functional limitations greater than those assessed by the examining and reviewing physicians. Accordingly, the Court finds that the ALJ failed to fully and fairly develop the record, and the matter must be remanded for further development.

## II. Remand is Warranted

The record before the Court does not support the conclusion that the ALJ's error in failing to fully develop the record was "inconsequential to the ultimate nondisability determination" or that, despite the legal error, "the agency's path may reasonably be discerned." *See Brown-Hunter*, 806 F.3d at 592. Plaintiff urges the Court to remand for an award of benefits or, in the alternative, a remand to the Commissioner for further administrative proceedings. (Joint Stip. at 22.)

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, a district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a

18

determination of disability can be made." *Id.* n.26. Even if those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021). Here, because record has not been fully developed, the matter must be remanded.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REMANDED for further administrative proceedings. The ALJ is specifically directed to: (1) further develop the record by soliciting a functional assessment or source statement from treating pain management physician, Dr. Loomba; (2) to assign a specific weight to any such opinion; and (3) in light of this additional information, determine plaintiff's maximum residual function capacity.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 26, 2017

_/s/ Karen L. Stevenson_
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE